Ben Tuttle et al., Plaintiffs-Appellants, v. Ruby T. Murphy et al., Defendants-Appellees.

Gen. No. 10,692.

Opinion filed September 22, 1953. Released for publication October 9, 1953.

Pool & Langer, of Ottawa, and Chester E. Jacobson, of Leland, for appellants.

Clark H. Countryman, and Jay W. Pugh, both of De Kalb, for appellees.

Mr. Justice Wolfe delivered the opinion of the court.

. Ben Tuttle et al., children and heirs at law of Tomina Tuttle, filed a suit in the circuit court of De Kalb county for the construction of the will of Tomina Tuttle. The defendants are three daughters of Tomina Tuttle who are also the executors of the last will and testament of their mother. They filed a motion to dismiss the complaint, which was sustained as to the first count. The plaintiffs elected to stand by their complaint and this count of the complaint was dismissed by the court.

Judgment was entered against the plaintiffs and they have perfected an appeal to this court.

It is alleged in the complaint that Tomina Tuttle on the 11th day of April 1951, died leaving a last will and testament, which was admitted to probate in the county court of De Kalb county, Illinois, on May 29, 1951; that her will is dated July 10, 1942; that at the time of the execution of the will she was the owner of a farm of one hundred and sixty acres; that by clause three of her will, she specifically devised the farm to her eight children, share and share alike; that prior to her death Mrs. Tuttle sold the one hundred and sixty acre farm for a sum in excess of $33,000; that she distributed the main part of the proceeds of the farm among her children, except the sum of $6,765.18, which it is alleged she retained and kept intact and had this sum on hand at the time of her death.

It is also alleged that at the time of the sale of the farm, Tomina Tuttle was about seventy-three years of age; that she had suffered a severe stroke several years before which had left her in an impaired condition of body and mind; that she turned over the management of her affairs to her three daughters, Ruby T. Murphy, Pearl I. LaVoy and Martha I. Travis, and that she trusted in the business ability and integrity and honesty of the three daughters as her agents; that there was a confidential relation existing between the mother and three daughters; that the said three daughters, or one or more of them, by means of undue influence and false and fraudulent representation, induced and persuaded their mother to withdraw large sums of money from her bank account, and turn the money over to them, contrary to the mother's intention and her will, had she been acting on her own volition, and without such undue influence; that the said three sisters induced their mother to withdraw amounts totalling $12,-

000, which was turned over to the three sisters, the defendants in this suit.

The prayer of the petition is that the will be construed and the proceeds from the farm be declared part of the assets of the estate of Tomina Tuttle, and be distributed as intestate property, and that the three defendants be ordered to account to the other heirs for their proportionate share of the $12,000, which they had unlawfully persuaded their mother to distribute to them.

A copy of the will was attached to the complaint. The motion to strike is general, and stated that the questions involved are moot; that the complaint is not a plain and concise statement of the cause of action; that it is argumentative and conclusions of law, and is not paragraphed according to the statute, and is ambiguous and contains much irrelevant and immaterial matter.

The first three paragraphs of the will are the only ones which are important, so far as this proceeding is concerned. The first paragraph orders all the just debts and funeral expenses of the testatrix be fully paid. The second count is as follows: "After the payment of the said debts and funeral expenses I give and bequeath to my following named three daughters, namely: Martha I. Travis; Ruby T. Murphy and Pearl I. La Voy, all the rest, residue and remainder of my personal property, including chattel property, household effects, personal effects, cash in bank and on hand, notes, bonds and choses in action, to be theirs share and share alike, absolutely.

"Third:—"As to my farm of 160 acres in the Town of Northville, La Salle County, Illinois, I give and devise the same, share and share alike, to my eight children, namely:—Anna Knudson; Ben Tuttle; Otis Tuttle; Arthur Tuttle; Alma Roswold; Ruby T. Murphy;

Pearl I. LaVoy and Martha I. Travis; subject, however, to the following conditions and restrictions:" then follows restriction in regard to her children partitioning the land.

The question involved in this suit is whether the proceeds from the sale of the farm passes to the three daughters under the will, or whether it should descend to the heirs as intestate property. The three daughters claim the property under the second clause of the will, which they maintain contains a gift of the residue of the estate.

 Counsel for the appellee cite several cases that hold the presumption is that a testator intends to dispose of all of his property when he executes his will. No doubt this is a general rule of law, but is subject to exceptions. In the case of *Minkler v. Simons,* 172 Ill. 323, this question was before the Supreme Court, and in passing upon the controversy we find this language: "The testator merely revoked that part of the will in which the one-third was given to Thomas, but made no provision whatever where that one-third should go. No doubt the fact that the testator made no provision for the disposition of that one-third was an oversight of the person who drafted the codicil, but the court has no power to remedy the difficulty.

"The question then to be determined is, what becomes of the one-third devised originally to the testator's son, Thomas? The will and codicil make no provision whatever for its distribution. Neither the will nor the codicil contains a single word on the subject. There is, therefore, nothing to warrant a presumption of an intention on the part of the testator to make a disposition of the revoked share of the estate, except as to the sum of $1200. However reluctant courts may be to hold that a portion of the property of a testator shall be regarded as intestate property, they cannot do other-

wise where, as in this case, there is nothing to show an intention on the part of the testator to dispose of the property. Where a testator devises to three of his children property as tenants in common, and subsequently revokes the devise as to one and makes no disposition whatever of the share revoked, such share will not go to the other two, but it will descend as provided in the Statute of Descent." This case has been followed in several others both in our Supreme and Appellate Courts.

The next question arises, is what interpretation we must give the language of the testatrix in this will and whether it should be at the time the will was executed, or whether it speaks from the death of the testatrix. It has frequently been held that to interpret a will, you must consider the facts and circumstances of the testator at the time the will was executed. In *Heckler v. Young,* 264 Ill. App. 34, the Appellate Court of the First District had this same question presented to it and we there find this language: "It is axiomatic that in determining such a question as this the court should attempt to put itself in the place of the testator for the purpose of arriving, if possible, at the intention of the testator. It has been aptly expressed that to arrive at the intention the court "sits in the testator's armchair." *Boyle v. Moore,* 299 Ill. 571; *Wallace v. Noland,* 246 Ill. 535; *Bingel v. Volz,* 142 Ill. 214; *Himmel v. Himmel,* 294 Ill. 557. While it is the general rule that a will speaks from the death of the testator, yet this rule has limitations where there are circumstances which indicate that to enforce the rule will not carry out the intention of the person making out the will. In *In re Mandelle's Estate,* 252 Mich. 375, the court said: "It is more accurate to say that a will is not operative until the death of the maker, and then speaks the intention of the maker at the time of its execution."

In *Lydick v. Tate,* 380 Ill. 616 it is stated: "It is true that for the purpose of ascertaining the effect and operation of a will, it speaks from the death of the testator. . . . Nevertheless, for the purpose of ascertaining the testator's intention, a will must necessarily speak from the date of its execution." The court then quotes from the case of *Heckler v. Young, supra,* and approves the same. With these rules in mind, then what was the intention of the testatrix at the time she drew her will? There can be no question but that she intended to give the personal property that she then had to her three daughters, and to divide the farm equally among her eight children. It is claimed by the appellees that by the second clause of the will, they were given all of the personal property that their mother had at the time of her death. Interpreting the will as we must to find the intention of the testatrix at the time that she executed her will, there is nothing to indicate in this second clause of the will that she intended to give these three daughters her entire estate to the exclusion of the other brothers and sisters. Our attention has not been called to any case, where this exact question has been presented either to the Appellate or Supreme Court, but we do find cases that by analogy, we think apply.

In the case of *Cummings v. Lohr,* 246 Ill. 577, the question arose whether real estate of the testator, acquired after he had executed his will, and when there was no specific direction in regard to its disposal,—should pass by the will, or descend as intestate property, the court there says: "The question whether a will passes real estate acquired after its execution depends upon the intention of the testator. Unless an intention to dispose of such estate affirmatively appears from the will it will not pass." To the same effect is *Watts v. Killian,* 300 Ill. 242.

In the case of *Lewis v. Hill,* 387 Ill. 542, the conservator had sold part of his ward's estate and the question arose whether the proceeds of the sale should be distributed as real estate under the will, or as personal property. The court there held that under such circumstances the proceeds of the sale were impressed with a trust and should be distributed as of real estate, but the court further said: "There is no doubt that had the testatrix herself, not being incompetent, sold the property specifically devised, the subject matter of the devise would have been withdrawn from the operation of the will and the devisee would have no claim to the proceeds of such sale."

 Another case that states the law clearly in regard to the presumption that this testator intended to dispose of all of his property when he made his will, is *Pontius v. Conrad,* 317 Ill. 241, and is as follows: "It is true, as the appellees insist, that a testator is presumed to have intended by his will to dispose of all his property and leave no part of it as intestate estate, and the court will adopt any reasonable construction of the will rather than hold that the testator intended to die intestate as to any of his property. If, however, the testator has overlooked a condition which he would perhaps have provided for if it had occurred to him, the court cannot guess at what provision he would probably have made and by construction read it as a part of his will on the presumption that he would naturally have made such a provision if he had thought of it. (*Moeller v. Moeller,* 281 Ill. 397.) Where there is nothing in the will itself to show the intention of the testator as to the disposition of his property in the condition which has actually arisen, the court cannot hold that the will disposes of the property in a particular way, on the supposition that the testator would prob-

ably have disposed of it in that way if his attention had been called to, the particular circumstances."

In *Phillippe v. Clevenger*, 239 Ill. 117, the testator willed an eighty-acre farm to his daughter. Later he deeded the farm to the daughter and later the daughter deeded the farm back to her father. The daughter claimed the eighty-acre farm by the will. The court there held that: "A provision of a will devising land is revoked, by implication, by a conveyance of the land during the testator's lifetime, and it is not revived when the testator subsequently re-acquires the title to such land, where the will is not re-published in the manner provided by the statute for the execution of wills.",

There is another presumption that is in favor of the appellants, namely; that in the interpretation of wills courts will favor the heirs, and in the case of *Pontius v. Conrad, supra,* we find the following: "Another presumption which prevails in the interpretation of wills is against a construction which will have the result to disinherit the heir. The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture. When the testator intends to disinherit them he must indicate that intention clearly, either by express words or by necessary implication. The intention must be manifest and rest on something more certain than conjecture. The heir is not to be disinherited except by express devise, or by implication so inevitable that an intention to the contrary cannot be supposed. Devises by implication have been recognized where a necessary implication of devise arises from the provisions of the will, but probabilities as to the testator's intention cannot be weighed. The implication must be so strong that an intention contrary to that imputed to the testator cannot be presumed to have existed in his mind. The implication must be so necessary as to leave no hesitation in the

mind and permit no other inference. (*Connor v. Gardner,* 230 Ill. 258.) A gift by implication cannot be inferred from silence on the subject but must be based upon some expression in the will. *Bond v. Moore,* 236 Ill. 576; *Martin v. Martin,* 273 id. 595."

In the case of *Taylor v. Hull,* reported in [121 Kan. 102] 245 Pacific Reporter at page 1026, the Supreme Court of Kansas was considering a similar case. The syllabus is written by the court and it explains the questions involved in the suit and is as follows: "Sale of part of government bonds bequeathed in will held ademption of legacy pro tanto; proceeds of bonds bequeathed in will, but sold by testator before his death, held to constitute part of his property to be distributed to his heirs.

"A testator bequeathed to a named beneficiary United States government bonds, of the par value of $9,000, which he specifically described. Later he sold $3,000 worth of the bonds. At the time of his death he owned the remaining $6,000 worth of bonds, had $2,021 in the bank and a note for $1,000. Held, the legacy was adeemed as to the $3,000 worth of bonds sold; the legatee should receive the $6,000 worth of bonds, and the money in the bank and note constitute a part of the property of the testator's estate to be distributed to his heirs."

From an examination of the authorities, it is our conclusion that the remainder of the estate left in the estate of Mrs. Tuttle is intestate property, and should be distributed as such among the heirs. of the testatrix. The question then arises as to the rights of the parties to the $12,000 that is alleged in the complaint the three daughters obtained by undue influence over their mother when a fiduciary relation existed between them. It is alleged in the complaint that such fiduciary relation did exist, and through their undue influence they obtained the $12,000 from their mother.

259

<br/>

This, we will have to accept as a fact, as the motion to strike admits all facts in the complaint that are well pleaded. This complaint, if the question had been properly raised, might have been made more specific, but as before stated, the objections to it are general, and there is nothing specifically pointed out wherein the complaint was inadequate. If this can be proven, we see no reason why the three defendants should not be made to account for the proportionate share of the proceeds of this farm to the other heirs. It is our conclusion that the trial court erred in sustaining a motion to strike the complaint, and the judgment of the trial court is hereby reversed, and the cause remanded with directions to overrule the motion to strike the complaint.

*Judgment reversed and cause remanded with directions.*